UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

SAVAGE TAVERN, INC.,

      Plaintiff,

v.

                                       No. 5:21-CV-078-H

SIGNATURE STAG, LLC,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING SUMMARY JUDGMENT**

In a prior opinion granting the defendant a preliminary injunction in this trademark action, the Court detailed the facts and law that govern this case. To make a long story short, the plaintiff registered the defendant's trademark, then sued the defendant for trademark infringement. The Court concluded that the defendant, who is also the counter-plaintiff, was almost certain to succeed on the merits because it owns the trademark at issue.

The defendant now moves for summary judgment, renewing many of the arguments it made when seeking its preliminary injunction. The plaintiff failed to respond and has not filed a motion or evidence of its own; it has raised no dispute of material fact. Having reviewed the unopposed motion, the record, and the law, the Court grants the defendant's motion in part. The plaintiff's trademark registration will be canceled, a permanent injunction issued, and the plaintiff shall recover its damages, costs, and fees—this qualifies as an "exceptional case" under the law. But because the Court cannot say that the defendant is entitled to judgment as a matter of law on its fraudulent-registration claim, the Court denies the motion as to that claim.

1.      **Factual and Procedural Background**

The Court's opinion and order granting a preliminary injunction (Dkt. No. 21)

details the factual history of this case, so only a brief synopsis follows.

Signature Stag is a clothing store with locations in Lubbock and Midland.  Dkt. No.

11 at 1–4.  To promote its apparel in West Texas—where Texas Tech fans predominate—it

designed a logo ("the Mark") to affix to some of its products, including hats and shirts.  *Id.*

at 3–4.  The first item bearing the Mark was sold in 2016.  *Id.*

Savage Tavern is a sports bar near Texas Tech's campus in Lubbock that opened in

2018.  Dkt. No. 10 at 1–2.  Throughout its existence, it used the same Mark as Signature

Stag.  *See* Dkt. No. 21 at 2–5.

In 2020, Savage Tavern registered the Mark as a trademark (No. 6,140,413) with the

Patent and Trademark Office.  Dkt. No. 1 at 12.  In doing so, it represented that it had the

right to use the Mark and that it knew of no others who did.  It also said that it first used the

Mark in July 2017 (Dkt. No. 14 at 4), despite not opening until 2018.  Dkt. No. 11 at 29.

Savage Tavern then sued Signature Stag for trademark infringement.  Dkt. No. 1.

Signature Stag answered, counterclaimed, and moved for a preliminary injunction.  Dkt.

Nos. 4; 5; 9.  The Court granted the motion for a preliminary injunction and barred Savage

Tavern from any and all uses of the Mark until the Court could resolve the merits.  Dkt. No.

21.  In doing so, the Court noted that trademarks are owned by the first person to use them

in commerce, not the first person to register them with the PTO.  *Id.* at 21–23.  Since Savage

Tavern offered no evidence of its use of the Mark before Signature Stag's first sale, Signature

Stag was almost certain to prevail in showing that it is the Mark's true owner.  *Id.*

Signature Stag then moved for summary judgment, seeking judgment in its favor, a permanent injunction, cancellation of Savage Tavern's registration, and attorney's fees. Dkt. No. 22. No response was filed. The motion is ripe nevertheless.

## 2.    Governing Law

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, that law is the Lanham Act and Texas's law of unfair competition. Fortunately, the two are identical in all relevant respects. *Viacom Int'l v. IJR Cap. Invs., LLC*, 891 F.3d 178, 184 (5th Cir. 2018). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Id*. Accordingly, disputed fact issues that are "irrelevant and unnecessary" cannot preclude entry of summary judgment. *Id*. When ruling on a motion for summary judgment, the Court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

– 3 –

When a summary judgment movant will not have the burden of proof on a claim at trial, she can obtain summary judgment by pointing the Court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex*, 477 U.S. at 324–25. Once she does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id*. at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F. Supp. 2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:14-CV-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

Once the movant has made an initial showing that there is no evidence to support the nonmovant's case, the nonmovant must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Neither are

unsubstantiated assertions, improbable inferences, and unsupported speculation.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  And a party may not rely on inadmissible hearsay in opposing a motion for summary judgment.  *See Bellard v. Gautreaux*, 675 F.3d 454, 460–61 (5th Cir. 2012).

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."  *Ragas*, 136 F.3d at 458.  "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists."  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322–23.  And "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Matsushita Elec. Indus.*, 475 U.S. at 586 (cleaned up).

Local Rule 7.1(e) states that "[a] response and brief to an opposed motion must be filed within 21 days from the date the motion is filed."  Signature Stag filed its motion on April 4.  That means that Savage Tavern had until April 25 to file its response.  It failed to do so, making Signature Stag's motion unopposed.  *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).  When the nonmoving party fails to respond, the Court treats the moving party's facts as "undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2); *Eversley*, 843 F.2d at 174.  Nevertheless, the Court must conduct the Rule 56 analysis described above.  *Hibernia Nat'l Bank v. Administracion Central S.A.*, 776 F.2d 1277,

1279 (5th Cir. 1985).  Because Savage Tavern filed no response, all of Signature Stag's facts are undisputed.

3.      **Discussion**

Whether Signature Stag is entitled to summary judgment is not a difficult question. Savage Tavern dragged Signature Stag into Court believing that it owned the Mark.  Well-established trademark law and Signature Stag's unrebutted evidence should have disabused it of that notion in the earliest days of this case.  But even without the facts or the law on its side, Savage Tavern persisted in its quixotic efforts through hyperbole and misapprehension. It should have thrown in the towel long ago.

A.      **Lanham Act Unfair Competition Claim**

To prove unfair competition under the Lanham Act, Signature Stag must prove that the Mark is legally protectable and that Savage Tavern's use of the Mark creates a likelihood of confusion as to source, affiliation, or sponsorship.  15 U.S.C. § 1125(a)(1)(A); *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004); *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017); *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).  Signature Stag must also prove that it is the Mark's senior user.  *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).  "An ownership right 'accrues when goods bearing the mark are placed on the market.'" *Viacom Int'l, Inc. v. IJR Cap. Invs., LLC*, 891 F.3d 178, 186 (5th Cir. 2018) (quoting *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265 (5th Cir. 1975)).

The Court's prior opinion details why the Mark is protectible—it is a novel and detailed logo whose sole purpose is source identification.  Dkt. No. 21 at 18–20.  No evidence has been introduced that alters that analysis, and the Court incorporates it in full.

– 6 –

Signature Stag also has presented evidence that it designed and first used the Mark in 2016. *See* Dkt. No. 24 at 3–23.  Savage Tavern, meanwhile, has still never presented any evidence to the contrary.  *See* Dkt. No. 21 at 21 (noting that Savage Tavern presented no evidence at the preliminary-injunction stage).  Thus, Savage Tavern does not own the trademark at the center of this case because it was not the first to use it in commerce—Signature Stag was. Finally, Savage Tavern has presented no evidence that there is no likelihood of confusion. Indeed, it has argued that there is a likelihood of confusion between the two competing uses of the Mark.  Dkt. Nos. 1 at 8; 13 at 7.  Again, the Court incorporates in full its prior twenty-page likelihood-of-confusion analysis because no new facts have been presented that would change its conclusion that the competing uses of the Mark lead to a likelihood of confusion.  Dkt. No. 21 at 23–43; *see also Alliance for Good Government v. Coalition for Better Government*, 901 F.3d 498, 509 (5th Cir. 2018) ("While likelihood of confusion typically presents a contested fact issue, 'summary judgment may be upheld if the . . . record compels the conclusion that the movant is entitled to judgment as a matter of law.'") (quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)).

In sum, since the Mark is protectible, Signature Stag owns it, and the parties' competing uses give rise to a likelihood of confusion, Signature Stag is entitled to summary judgment as to its unfair-competition counterclaim against Savage Tavern.  And, as a necessary consequence, Signature Stag is also entitled to summary judgment as to all of Savage Tavern's claims against it (*see* Dkt. No. 1 at 7–10), as they all depend upon the now-debunked theory that Savage Tavern owns the Mark.

### B.    State-law Claims

"A common law trademark infringement action under Texas law presents no difference in issues than those under federal trademark infringement actions." *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, no writ); *Viacom Int'l v. IJR Cap. Invs., LLC*, 891 F.3d 178, 184 (5th Cir. 2018) ("A trademark infringement action under Texas common law is analyzed in the same manner as a Lanham Act claim."); *see* 70 Tex. Jur. 3d Trademarks, etc. § 35 (citing *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799 (Tex. App.—Austin 2001, pet. denied) and *Hardriders Motorcycle Club Assoc. v. Hardriders, Inc.*, 2015 WL 5025526 (Tex. App.—Houston [14th Dist.] 2015, pet. denied)).  Since Signature Stag prevails on its federal trademark claim, it prevails on its state claim, too.[1]

To the extent Savage Tavern believes that 15 U.S.C. § 1125(c)(6) bars such a claim, the Court points to its prior opinion and the following analysis:  Since Savage Tavern has no "valid registration," Section 1125(c)(6) is inapposite.  Dkt. No. 21 at 51–53.

---

[1] Signature Stag also brought claims for trade-dress infringement and dilution.  *See* Dkt. Nos. 5 at 6–7; Dkt. No. 23 at 19–21; *see also* Dkt. No. 10 at 5 (citing 15 U.S.C. § 1125(c)(1)).  The Court denies relief on these claims.  First, the Mark is a trademark, not trade dress, although that is largely a distinction without a difference.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992); McCarthy § 8.1.  Second, as to dilution:  Signature Stag has not established that the Mark is a "famous mark."  For a mark to be "famous," it must be "widely recognized by the general consuming public of the United States."  15 U.S.C. § 1125(c)(2)(A); *see Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 818 (5th Cir. 2019); *Bd. of Regents, Univ. of Texas Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 673–79 (W.D. Tex. 2008) (explaining that federal dilution claims should be reserved for marks akin to Budweiser, Barbie, and Camel); *see also* McCarthy § 24.104 ("The statutory requirement of 'fame' can be a potent barrier and its filtering mesh must be woven tightly by the courts so that only truly eminent and widely recognized marks are labeled as 'famous.'").  Texas's dilution statute is identical in all material respects, though it offers a more generous understanding of "famous."  *Compare* 15 U.S.C. § 1125(c) *with* Tex. Bus. & Com. Code § 16.103.  Still, Signature Stag has not proven beyond peradventure that the Mark is tantamount to Budweiser or Barbie amongst those in West Texas.  Regardless, neither the trade-dress nor the dilution claim would expand the scope of the relief to which Signature Stag is entitled—Signature Stag's other claims provide all the relief it seeks.

### C.      Cancellation of the Mark's Registration

"[D]istrict courts can cancel registrations during infringement litigation, just as they can adjudicate infringement in suits seeking judicial review of registration decisions." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 155 (2015); *see* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may . . . order the cancelation of registrations."). Where a court finds infringement by the registrant, cancellation is the best course, if not required. *See Central Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007); *Gracie v. Gracie*, 217 F.3d 1060, 1065–66 (9th Cir. 2000); *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 13–14 (5th Cir. 1974), *abrogated on other grounds by B & B Hardware*, 575 U.S. 138; *Bascom Launder Corp. v. Telecoin Corp.*, 204 F.2d 331, 335–36 (2d Cir. 1953); *see also* J. Thomas McCarthy, McCarthy on Trademarks § 30:109 (5th ed. 2018).

Only "[t]he owner of a trademark used in commerce may request registration of its trademark." 15 U.S.C. § 1051(a)(1); *Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312, 319 n.6 (C.C.P.A. 1976) ("One must be the owner of a mark before it can be registered."). "Ownership of trademarks is established by use, not by registration." *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990). Since Savage Tavern was not the Mark's first user, it was not the Mark's owner and, therefore, could not register the Mark. Its registration is void. McCarthy § 19:53 ("If the entity filing the application was not the owner of the mark as of the filing date, the application is void ab initio."). The Mark is less than five years old, so the Court orders that Savage Tavern's registration, No. 6,140,413, be cancelled as void ab initio.

### D.    Fraudulent Registration

Signature Stag counterclaimed for fraudulent registration (Dkt. No. 5 at 10–11) and now moves for summary judgement on that claim (*see, e.g.*, Dkt. No. 23 at 26).  *See* 15 U.S.C. § 1120 (creating a cause of action for anyone injured by a "false or fraudulent" registration).

To prove that a registration is "false or fraudulent," a challenger must prove "(1) a false representation, (2) regarding a material fact, (3) the registrant's knowledge or belief that the representation is false, (4) the intent to induce reliance on the misrepresentation, (5) reasonable reliance, and (6) damages proximately resulting from the reliance." *Burnscraft Mfg. Corp. v. Nat'l Constr. Rentals, Inc.*, No. H-13-2769, 2014 WL 1386300, at *4 (S.D. Tex. Apr. 9, 2014) (Rosenthal, J.) (citing *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990)).  "To succeed on a claim of fraudulent registration, the challenging party must prove by clear and convincing evidence that the applicant made false statements with the intent to deceive the licensing authorities." *Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir. 1993).  A party bears a heavy burden to prove fraud. *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 644 (N.D. Tex. 2009) (Kinkeade, J.). "'Because the trademark application oath is phrased in terms of a subjective belief, it is extremely difficult to prove fraud so long as the signer has an honestly held, good faith belief that it is the senior right holder.'" *Burnscraft*, 2014 WL 1386300 at *9 (quoting *Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1235 (C.D. Cal. 2007)).  In addition, the party attempting to show fraud must show that the PTO reasonably relied on the misrepresentation and that the registration resulted in injury. *Texas Pig Stands, Inc. v. Hard*

*Rock Cafe Int'l, Inc.*, 951 F.2d 684, 693 n.14 (5th Cir. 1992) (citing *Artcraft Novelties v. Baxter Lane Co.*, 685 F.2d 988, 992 (5th Cir. 1982))

Based on the record before it, the Court is unable to determine whether Savage Tavern procured its registration through fraud. As the Court has previously discussed, there is strong evidence that Brandon Fuller, Savage Tavern's agent and the individual who signed the registration application with the Patent and Trademark Office, knew of a "concurrent use" of the Mark at the time the application was filed and failed to disclose such knowledge, contrary to 15 U.S.C. § 1051(a)(3)(D). Dkt. No. 21 at 48; *see also* TEAS Plus Application, Serial No. 88-777,542 (Jan. 29, 2020)[2] (Savage Tavern's registration application, signed by Brandon Fuller, and sworn under penalty of perjury). But the Court cannot grant summary judgment as a matter of law on the record before it because Signature Stag has not proven beyond peradventure that the registration was fraudulent, rather than simply false. Proving fraud requires proving scienter by clear and convincing evidence. McCarthy § 31:61; *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) ("Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis."). The circumstantial evidence of fraud before the Court is strong—particularly in light of the fact that Fuller is alleged to have known of Signature Stag's use of the mark on apparel before the registration was filed—but the Court cannot say that it is proven by clear and convincing evidence.

The Court therefore denies Signature Stag's motion as to its fraudulent-registration claim. Of course, Signature Stag is free to proceed to trial on this claim if it chooses. The

---

[2] Available at https://tsdr.uspto.gov/documentviewer?caseId=sn88777542&docId=FTK20200
203121535#docIndex=15&page=1.

Court notes that it will cancel Savage Tavern's registration and, as explained below, has determined that this is an exceptional case, entitling Signature Stag to its fees and costs. It is unclear, then, what additional relief a finding that the registration was fraudulently obtained would afford Signature Stag.

4.    **An Exceptional Case**

Savage Tavern sought attorney's fees in its complaint. Dkt. No. 1 at 10. Signature Stag made the same request in its counterclaim (Dkt. No. 5 at 13) and its motion for summary judgment (Dkt. No. 23 at 26–29). The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Since Signature Stag has been granted relief in the form of a judgment, cancellation, and an injunction, it is a prevailing party entitled to seek attorney's fees. *See Kiva Kitchen & Bath Inc. v. Capital Distrib., Inc.*, 319 F. App'x 316, 322 (5th Cir. 2009).

Given the general language of Section 1117(a), Courts have concluded that there is no rigid test for determining what "exceptional" means. Courts therefore consider the totality of the circumstances when determining whether to award fees. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). An "exceptional case" is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*; *Baker v. DeShong*, 821 F.3d 620, 623 (5th Cir. 2016) ("While *Octane Fitness* directly concerns the scope of a district court's discretion to award fees for an 'exceptional' case under § 285 of the Patent Act, the case guides our interpretation of § 1117(a) of the Lanham Act and is instructive here."). "[F]rivolousness, motivation, objective unreasonableness (both in the factual and legal components of the

– 12 –

case) and the need in particular circumstances to advance considerations of compensation and deterrence" are all proper considerations. *Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.9 (1994)). For example, a "case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to be 'exceptional.'" *Octane Fitness*, 572 U.S. at 555. "The determination as to whether a case is exceptional is left to the sound discretion of the trial court." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996).

Whether the party seeking fees is the plaintiff or the defendant slightly alters the Court's analysis. *See* McCarthy §§ 30:99, 30:100, 30:101. A prevailing party, however, need not show bad faith, malice, or fraud—an exceptionally weak claim or defense by the opposing party can suffice, as can vexatious or inexplicable litigation conduct. *Alliance for Good Government v. Coalition for Better Government*, 919 F.3d 291, 295–96 (5th Cir. 2019) (Higginbotham, J.).

With the exception of this case's earliest days, Savage Tavern has always had a fatally flawed claim. Signature Stag's answer stated its first-use date of 2016. Dkt. No. 4 at 2. Page two of its counterclaim then cited the seminal Fifth Circuit case for the proposition that ownership of a trademark is conferred by use, not registration. Dkt. No. 5 at 2 (citing *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 842 (5th Cir. 1990)). It supported its counterclaim with affidavits and contemporaneous business records to support its first-use date of 2016. *See* Dkt. No. 5 at 15–32. Nevertheless, having hauled Signature Stag into court, Savage Tavern persisted in litigating this case due to either obstinance or a continued misapprehension of trademark law, believing that registration conferred ownership. *See, e.g.*, Dkt. No. 13 at 7 ("Here, the only USPTO trademark

ownership before this Court is that of Plaintiff, demonstrated by Plaintiff's USPTO Certificate of Registered Trademark.").  There was no good-faith basis for Savage Tavern's continued litigation of this case after Signature Stag filed its counterclaim, affidavits, and business records.  *See* Fed. R. Civ. P. 11.

Moreover, the assertion in Savage Tavern's complaint that it has used the mark in commerce "continually since at least 2017" (Dkt. No. 1 at 4) is wholly unsupported by the record.  Savage Tavern offers zero evidence of its use before 2018.  The only "evidence" of its use in 2017 comes from its registration statement but, again, that is a self-serving and entirely suspect statement.  *Id.* at 12.  The Court need not find that the registration was fraudulent to conclude that the asserted first-use date in Savage Tavern's complaint is, as best the Court can tell, a fabrication or blind reliance on the registration statement.  Thus, there has been a complete failure of proof on Savage Tavern's part.

Further bolstering the Court's conclusion that this case is exceptional is Savage Tavern's refusal to respond to Signature Stag's motion for summary judgment.  Savage Tavern has not dismissed its claims against Signature Stag despite the Court's exhaustive analysis in the preliminary injunction opinion, but it offers no response to the summary judgment motion.  *See Off Lease Only, Inc. v. Lakeland Motors, LLC*, 846 F. App'x 772 (11th Cir 2021) (affirming an award of fees based on the weakness of the plaintiff's case and the lack of evidence in response to the defendant's summary judgment motion).  Savage Tavern's continued assertion of its claims after the preliminary injunction—but complete silence in response to Signature Stag's motion—speaks volumes.  That contrast further demonstrates the exceptional nature of this case

In short, the weakness of Savage Tavern's litigating position and the unreasonable manner in which it persisted in that position compel the Court to conclude that this is an exceptional case.  The Court will, however, cabin the fees award to those incurred after Signature Stag filed its answer and counterclaim.  Savage Tavern's complaint is not unreasonable on its face, but it became so in light of Signature Stag's unrebutted evidence and Savage Tavern's own assertions, which were contrary to the Lanham Act's plain text and longstanding common law rules.

**5.    Conclusion**

First use is a necessary but not sufficient condition to prevail in a trademark action. If the owner of a registered mark is sued by someone who uses the same mark in a different part of the country or for different goods, the junior user may emerge unscathed because there is no likelihood of confusion.  But where two parties use the same mark in the same area and on similar goods, giving rise to a likelihood of confusion, ancient principles of trademark law dictate that the senior user prevails.  Savage Tavern started this lawsuit with that contention—that its use was fundamentally incompatible with Signature Stag's.  It now finds itself hoisted by its own petard.

Thus, for the reasons set forth above and in the Court's memorandum opinion and order granting a preliminary injunction (Dkt. No. 21), the defendant's motion for summary judgment (Dkt. No. 22) is granted as to its state and federal infringement claims and its cancellation claim, but it is denied as to its fraudulent-registration claim and as to any dilution or trade-dress claims.  Similarly, the Court concludes that this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).  Signature Stag is entitled to recover attorney's fees incurred after April 22, 2021.

Signature Stag is ordered to file a notice with the Court within 7 days of this order stating whether it intends to pursue its fraudulent-registration claim to trial.  After the Court has received and considered that notice, the Court will solicit proposed language for a permanent injunction and briefing on Signature Stag's damages, fees, and costs.  The Court's preliminary injunction remains in full effect pending entry of a permanent injunction.

The Clerk of Court is directed to transmit a copy of this opinion and a copy of the Court's preliminary injunction opinion (Dkt. No. 21) to the Director of the United States Patent and Trademark Office for cancellation of Savage Tavern's trademark registration (No. 6,140,413) pursuant to 15 U.S.C. § 1119.

So ordered on May 10, 2022.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE